ah<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mikael M. Safarian, | |
| Plaintiff, | |
| v. | Civ. No. 10-6082 |
| American DG Energy Inc., et al., | OPINION |
| Defendants. | |

American DG Energy Inc.,

       Third-party Plaintiff,

v.

Multiservice Power Inc.,

       Third-party Defendant.

<u>THOMPSON, U.S.D.J.</u>

This matter appears before the Court on the motion for summary judgment brought by Defendant American DG Energy Inc., (hereinafter, "Defendant"), and the motion for summary judgment brought by Plaintiff Mikael Safarian. The Court has issued the Opinion below based upon the written submissions of the parties and after oral argument. For the reasons stated herein, the Court will grant Defendant's motion, (Doc. No. 44), and will deny Plaintiff's motion, (Doc. No. 45).

1

BACKGROUND

This matter centers on Defendant's alleged retaliation against Plaintiff.  Defendant is a publicly traded company that operates in the utility business.  (Doc. No. 45, Plaintiff's Statement of Material Facts at 1).  Plaintiff is an engineer who serviced and installed Defendant's machines from approximately December 2006 to April 2010.  (*Id*. at 4).  Plaintiff worked Mondays through Fridays, as well as some weekends, on Defendant's sites in New York and New Jersey. (*Id.* at 6).  Defendant instructed Plaintiff as to which job site he should visit and what services should be performed there.  (*Id*. at 4).  Defendant supplied Plaintiff with the materials to install and fix its devices and gave Plaintiff other items, such as a cellphone, a beeper, and clothes with the company logo.  (*Id*. at 6, 8).

Defendant and Plaintiff disagree on the question of Plaintiff's employment status. Plaintiff was paid by Defendant through Multiservice, a company Plaintiff owned.[1]  (Doc. No 44, Defendant's Statement of Material Facts at 1, 2, 4; Doc. No. 48, Plaintiff's Response to Defendant's Statement of Material Facts at 5).  In addition to paying Plaintiff and submitting invoices for Plaintiff's work, Multiservice also had its own insurance, hired its own accountant, filed payroll taxes, owned its own truck, and received various benefits available to small businesses.  (Defendant's Statement of Material Facts at 3-5).

On March 23, 2010, one week prior to his termination, Plaintiff admitted that he was not an employee of Defendant and informed Defendant that Multiservice's accountant would handle a tax issue because Plaintiff was not an employee.  (Doc. No. 44, Ex. D).  In 2009, Plaintiff had received two written offers of employment.  (Defendant's Statement of Material Facts at 5).

---

[1] Plaintiff contends that he was "reimbursed" for his time and expenses "just like all other individuals employed by Defendant."  But Plaintiff does not deny that the payments were made from Defendant to Multiservice.  (Doc. No. 48 at 5).

However, Plaintiff did not attempt to accept either offer until after both had lapsed.  (*Id.*).

Plaintiff altered the expiration date of one offer in an attempt to accept that offer.  (*Id.*).

Plaintiff's relationship with Defendant was terminated in April of 2010.  (*Id.* at 14).

While working on Defendant's sites, Plaintiff "disclosed [and] threatened to disclose" certain acts and omissions to Defendant's employees and Defendant's customers.  (Plaintiff's Statement of Material Facts at 9).  Plaintiff "repeatedly" objected to overbilling, improper construction, and failure to obtain permits.  (*Id.* at 10).  Defendant incurred costs by correcting these problems.  (*Id.* at 11).

In this lawsuit, Plaintiff has brought the following claims:

1. Violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act;
2. Violation of the Fair Labor Standards Act ("FLSA"): Failure to Pay;
3. Violation of FLSA: Retaliation;
4. Violation of New Jersey's Wage and Hour Law: Failure to Pay;
5. Violation of New Jersey's Wage and Hour Law: Retaliation;
6. Breach of Contract;
7. Promissory Estoppel;
8. Violation of Conscientious Employee Protection Act ("CEPA"): Adverse Employment Action;
9. Violation of CEPA: Hostile Work Environment;
10. Violation of Public Policy: *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 61 (1980).

## DISCUSSION

### 1. *Legal Standard*

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law

[. . .]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Id.*  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson,* 477 U.S. at 250 (quoting Fed.R.Civ.P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  *Orsatte v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg,* 594 F.3d 210, 227 (3d Cir. 2010) (citations omitted) ("[S]peculation and conjecture may not defeat summary judgment.").

   *2.  Analysis*

   Most of Plaintiff's claims turn on his employment status.  Therefore, the Court will first examine whether Plaintiff is an employee or independent contractor before turning to the Dodd Frank, breach of contract, and promissory estoppel claims.

   i.   Plaintiff's Employment Status

   To bring a claim under the FLSA, CEPA, *Pierce,* or the New Jersey Wage and Hour Law, Plaintiff must be an "employee" of Defendant.  *See, e.g., Martin v. Selker Bros., Inc.*, 949 F.2d

1286, 1293 (3d Cir. 1991); *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 61 (1980) ("an employee at will has a cause of action against her employer to recover damages for the termination of her employment").  In determining the existence of an employment relationship, the Court should not solely rely upon "isolated factors but rather upon the 'circumstances of the whole activity.'" *Martin*, 949 F.2d at 1293.  Though the entire relationship should be examined, courts have developed certain criteria to assist them in this determination.  The Third Circuit has specifically enumerated the following factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293.

Here, the question of employment status is far from straightforward.  Some facts of this relationship, such as the continued and exclusive relationship, the importance of the service to the business, payment on a per-hour basis, and the provision of uniforms, tools, and a phone, are often associated with employee relationships. (Plaintiff's Statement of Material Facts at 1, 3, 5).  However, Plaintiff structured his relationship with Defendant as an independent contractor and gained certain benefits that come with this status.

First, Plaintiff billed his work for Defendant through invoices from his company, Multiservice, and also used his company to claim certain tax deductions and receive insurance. (Defendant's Statement of Material Facts at 3-5).  After experiencing the benefits available through this arrangement, Plaintiff "stumbles" in an effort to characterize himself as an employee of Defendant.  (*Id.* at 5).  When asked about a taxation issue, Plaintiff admitted he was not an

5

employee.  (*Id.* at 5) ("I am not an employee of ADG as of yet.  What you have received is an invoice not an expense report.  The taxes that I am collecting [] will be taken by the state government quarterly by my accountant for [Multiservice].").  Plaintiff rejected two written offers to become Defendant's employee.  (*Id.* at 5). Only after the offers expired did Plaintiff attempt to accept one of the offers by unilaterally altering the offer's expiration date.  (*Id.* at 5). Based on a thorough review of the record and the factors set forth in the *Martin* case, the Court concludes that Plaintiff is an independent contractor.

Therefore, Plaintiff cannot bring claims under FLSA, CEPA, *Pierce*, or the New Jersey Wage and Hour Law.

ii.   Dodd Frank

Defendant argues that a Dodd Frank "whistleblower" must meet two requirements: (1) he must disclose the violations to the SEC; and (2) his disclosures must be the kinds of disclosures required by Section 78u-6(h)(A)(iii).[2]

a.  **Requirement One: Report to the SEC**

Here, Plaintiff did not disclose the violations he asserts against Defendant to the SEC. However, there is currently substantial disagreement as to whether a plaintiff has to report to the SEC to bring a claim under Dodd Frank.  This disagreement stems from an apparent inconsistency between two sections of the statute, Section 78u-6(a)(6) and Section 78u-6(h)(A)(iii).[3]

---

[2] Plaintiff's independent contractor status does not bar him from bringing the Dodd Frank claim. *See Lawson v. FMR LLC*, 134 S. Ct. 1158 (2014).

[3] Section 78u-6(a)(6) defines a "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the [SEC], in a manner established, by rule or regulation, by the Commission."  15 U.S.C.A. § 78u-6(a)(6).  On the other hand, Section 78u-6(h)(A)(iii), which defines the scope of protection afforded under the statute, does not require

Relying primarily on a plain reading of Section 78u-6(a)(6) of the statute, the Fifth Circuit and some district courts have held that an individual must report to the SEC to bring this "whistleblower" claim.  *See Asadi v. G.E. Energy*, 720 F.3d 620 (5th Cir. 2013); *Banko v. Apple Inc.*, 2013 WL 7394596 (N.D. Cal. Sept. 27, 2013).  However, most district courts have deferred to the SEC's broader interpretation of "whistleblower," holding that a plaintiff need not report to the SEC itself if his disclosures fell under the four categories listed in 78u-6(h)(1)(A)(iii).  *See, e.g., Khazin v. TD Ameritrade Holding Corp.*, 2014 WL 940703 (D.N.J. Mar. 11, 2014); *Murray v. UBS Sec., LLC*, 2013 WL 2190084 (S.D.N.Y. May 21, 2013).[4]

The Court need not weigh in on this issue and determine if Plaintiff's failure to report to the SEC alone forestalls his claim because Plaintiff fails to show that his disclosures fall under any of the four categories listed in Section 78u-6(h)(1)(A)(iii).

### b.  Requirement Two: Disclosures Protected Under Section 78u-6(h)(1)(A)(iii)

Section 78u-6(h)(1)(A)(iii) lists four categories under which a plaintiff's disclosures must fall to bring a whistleblower claim under Dodd Frank.[5]  Since Plaintiff has only identified one of

---

disclosure to the SEC.  15 U.S.C.A. § 78u-6(h)(A)(iii) (protecting individuals who "mak[e] disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 . . ., this chapter . . . , section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission").

[4] The SEC, which is statutorily charged with implementing this statute, has attempted to reconcile these conflicting definitions, by explaining that "anti-retaliation protections apply to three different categories of whistleblowers, *and the third category includes individuals who report to persons or governmental authorities other than the Commission.*"  SEC Securities Whistleblower Incentives and Protections, 76 Fed.Reg. 34300–01, at *34304 (2011).

[5] Such as disclosures that are "required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission."  Section 78u-6(h)(1)(A)(iii).

these categories, the Sarbanes-Oxley Act of 2002, the Court will only address this category of claims.

To receive protection under the Sarbanes-Oxley Act, a plaintiff must convey an objectively reasonable belief that the company violated "section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholder." 18 U.S.C.A. § 1514A (West); *Wiest v. Lynch*, 710 F.3d 121, 125 (3d Cir. 2013). Here, Plaintiff reported overbilling, improper construction, and the failure to obtain proper permits to Defendant's employees. Plaintiff states that these disclosures are protected because he reasonably believed that the fraudulent billing of customers "result[s] in misstatement[s] of accounting records to . . . shareholders and fraudulent tax submissions to [the] Internal Revenue Service." (*See* Doc. No. 27 at 6). However, these disclosures are not protected under the Sarbanes-Oxley Act. Though overbilling might eventually lead to incorrect accounting records and tax submissions, these kinds of disclosures were not contemplated by the statute, have not been protected by other courts, and should fall outside the scope of the Sarbanes-Oxley Act.

Applying the protections of the statute to Plaintiff's disclosures would be inconsistent with the purposes of the statute. The Sarbanes-Oxley Act is designed to "protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws, and for other purposes." SARBANES–OXLEY ACT OF 2002, PL 107–204, July 30, 2002. Moreover, the Act's provisions are "aimed at controlling the conduct of accountants, auditors, and lawyers who work with public companies." *Lawson v. FMR LLC*, 134 S. Ct. 1158, 1162 (2014). Here, Plaintiff is an engineer who has no involvement with the company's accounting or taxation practices, and the reported activity did not deal with corporate disclosures.

8

Next, Plaintiff has not provided any case in which courts have applied the protections of this statute to similar types of disclosures.  Plaintiff cites *Wiest v. Lynch* in support of his argument. *See* 710 F. 3d 121 (3d Cir. 2013).  However, Plaintiff's case differs markedly from *Wiest v. Lynch*, a case in which the Third Circuit held that an accountant was entitled to protection under the Sarbanes-Oxley Act if he discloses what he reasonably believes to be a "potentially fraudulent tax deduction [or] misstatement of accounting records."  *Id*. at 135.  In that case, the plaintiff alleged that labeling a certain event as a business expense would be fraudulent accounting and tax reporting.  *Id*. at 136.  In contrast, Plaintiff does not examine, produce, submit, or approve the accounting reports or tax submissions.  Moreover, Plaintiff does not show that the reported violations are similar to, or are normally associated with, tax fraud or accounting fraud.  Plaintiff does not contend that Defendant misreported his income to the IRS or shareholders.  The actions here are too far removed from the accounting practices targeted by the Sarbanes-Oxley Act.

Finally, applying the Sarbanes-Oxley Act to any fraudulent actions that might lead to misstatements in the accounting records or tax submissions would unduly expand the Act to a general anti-retaliation statute.  If the actions alleged here sufficiently relate to fraud against shareholders, it is difficult to foresee an illegal act which would not fall under the purview of the Sarbanes-Oxley Act.

For the reasons set forth above, Plaintiff has not shown that he is entitled to the protections of this statute.  Summary judgment will be granted in Defendant's favor.

iii.    Breach of Contract

Under New Jersey law, a "contract is formed when there is a 'meeting of the minds' between the parties . . . and an unconditional acceptance." *Morton v. Orchard Land Trust*, 180 N.J. 118, 129-30 (2004).

Here, Plaintiff alleges that "Defendant breached [an oral] agreement it had with Plaintiff whereby Plaintiff would continue his employment with Defendant and Defendant would provide Plaintiff benefits that it provided to other employee[s]."  (Doc. No. 45 at 27).  Plaintiff contends, in a conclusory fashion, that the elements of a contract were met.  However, he points to no specific part of the record upon which a reasonable jury could rely in finding that there was a meeting of the minds or unconditional acceptance.  (Doc. No. 45 at 27).  Moreover, the language of this alleged agreement also shows that his claim hinges on his employment status.  (Doc. No. 45 at 27) ("Plaintiff would continue his employment").  For the reasons set forth above, Plaintiff has not shown that he is an employee, and the claim for breach of contract fails.

iv.    Promissory Estoppel

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Coates v. Cooper Health Sys./Cooper Univ. Health Care*, 2014 WL 1350374, at *3 (D.N.J. Apr. 7, 2014).

Here, Plaintiff contends that Defendant made a promise to "provide Plaintiff [with the] benefits that it provided to other employee[s]" in exchange for Plaintiff's continuing his employment.  (Doc. No. 45 at 27).  However, for the reasons set forth above, Plaintiff was not an employee.  Plaintiff can also not show that he relied upon this promise to his detriment because Plaintiff rejected two formal offers of employment.  Taking the facts in the light most favorable

10

to Plaintiff, no reasonable jury could find in Plaintiff's favor.  Summary judgment is granted in Defendant's favor.

CONCLUSION

For the reasons set forth above, the Court will grant summary judgment in Defendant's favor.

_Anne E. Thompson_
ANNE E. THOMPSON, U.S.D.J

Dated: April 29, 2014