NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mikael M. Safarian, <br><br> Plaintiff, <br><br> v. <br><br> American DG Energy Inc., et al., <br><br> Defendants. <br><br>―――――――――――――――<br><br> American DG Energy Inc., <br><br> Third-party Plaintiff, <br> v. <br><br> Multiservice Power Inc., <br><br> Third-party Defendant. | Civ. No. 10-6082 <br><br> OPINION |

THOMPSON, U.S.D.J.

This matter appears before the Court on the Motions for Summary Judgment brought by Defendant American DG Energy Inc., ("Defendant") and by Plaintiff Mikael Safarian ("Plaintiff"). The Court has issued the Opinion below based upon the written submissions of the parties and after having heard oral argument. For the reasons stated herein, Defendant's Motion for Summary Judgment (ECF No. 44) will be granted in part and denied in part. Plaintiff's Motion for Summary Judgment (ECF No. 45) will be denied in its entirety.

1

BACKGROUND

This matter centers on Defendant's alleged retaliation against Plaintiff. Defendant is a publicly traded company that operates in the utility industry. (Pl.'s Statement of Material Facts ¶¶ 2, 3, ECF No. 45-1). Plaintiff is an engineer who serviced Defendant's machines from approximately December 2006 to April 2010. (*Id*. ¶ 20; Def.'s Statement of Material Facts ¶ 11, ECF No. 44-1). Plaintiff worked Mondays through Fridays, as well as some weekends, for at least forty hours per week at Defendant's sites in New York and New Jersey. (Pl.'s Statement of Material Facts ¶ 30; Am. Compl. ¶ 6, ECF No. 27). Defendant instructed Plaintiff as to which job sites he should visit and what services should be performed there. (Pl.'s Statement of Material Facts ¶ 22). Defendant also gave Plaintiff some materials for performing his work, such as a cell phone, a laptop computer, and clothes with the company logo. (*Id*. ¶ 40).

Defendant and Plaintiff disagree on the question of Plaintiff's employment status. Plaintiff was paid by Defendant through Multiservice, a company Plaintiff owned.[1] (Def.'s Statement of Material Facts ¶¶ 3, 7; Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 7(f), ECF No. 48-1). In addition to paying Plaintiff and submitting invoices for Plaintiff's work, Multiservice also had its own insurance, hired its own accountant, filed payroll taxes, owned its own truck, and received various benefits available to small businesses. (Def.'s Statement of Material Facts ¶ 7). In 2009, Defendant twice offered employment to Plaintiff as an at-will employee. (Def.'s Statement of Material Facts ¶¶ 9, 10). However, the parties dispute whether Plaintiff accepted the offer of employment, and the parties' relationship continued under the

---

[1] Plaintiff contends that he was "reimbursed" for his time and expenses "just like all other individuals employed by Defendant." (Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 7(e)). But Plaintiff does not deny that the payments were made from Defendant to Multiservice.

same arrangements as before until Plaintiff's relationship with Defendant was terminated in April 2010. (*Id.*; Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 9-11).

While working on Defendant's sites, Plaintiff "disclosed [and] threatened to disclose" certain acts and omissions to Defendant's employees and Defendant's customers. (Pl.'s Statement of Material Facts ¶ 53). Plaintiff "repeatedly" objected to overbilling of customers, improper construction, and failure to obtain permits. (*Id.* ¶¶ 59-61). Defendant incurred costs by correcting these problems, and Plaintiff alleges that these costs were the reason for his termination. (*Id.* ¶ 63).

On September 22, 2010, Plaintiff filed the present lawsuit against Defendant in the Superior Court of New Jersey. Plaintiff brought the following claims:

1. Violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act;
2. Violation of the Fair Labor Standards Act ("FLSA"): Failure to Pay;
3. Violation of the FLSA: Retaliation;
4. Violation of New Jersey's Wage and Hour Law: Failure to Pay;
5. Violation of New Jersey's Wage and Hour Law: Retaliation;
6. Breach of Contract;
7. Promissory Estoppel;
8. Violation of the Conscientious Employee Protection Act ("CEPA"): Adverse Employment Action;
9. Violation of CEPA: Hostile Work Environment;
10. Violation of Public Policy: *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 61 (1980).

Defendant removed the case to federal court in November 2010. On March 3, 2014, both parties filed Motions for Summary Judgment. (ECF Nos. 44, 45). This Court heard oral argument, and on April 30, 2014, the Court issued an Opinion granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment. (ECF No. 54). Plaintiff appealed the Court's decision to the Third Circuit, arguing that this Court erred in its analysis of whether Plaintiff was an independent contractor or an employee because the Court failed to examine the facts in light of the *Martin* factors.

On July 21, 2015, the Third Circuit affirmed this Court's Opinion in part and vacated the Opinion in part. *Safarian v. Am. DG Energy Inc.*, No. 14-2734, 2015 WL 4430837 (3d Cir. July 21, 2015). The Third Circuit affirmed the Court's grant of summary judgment in favor of Defendant on Plaintiff's Dodd-Frank, breach of contract, New Jersey Wage and Hour Law, and promissory estoppel claims. However, the Third Circuit vacated this Court's Opinion with respect to Plaintiff's claims under the FLSA, CEPA, and *Pierce*, and remanded the case to this Court to consider the FLSA claim in light of the *Martin* factors and to consider the relevant factors under New Jersey law for the CEPA and *Pierce* claims. These three claims are now before the Court.

DISCUSSION

A. Legal Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n.2 (3d Cir. 1983).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S.

4

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is heavy: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg,* 594 F.3d 210, 227 (3d Cir. 2010) (citations omitted).

   B. Analysis

After the Third Circuit's partial affirmance and remand, three of Plaintiff's claims remain: claims under the FLSA, CEPA, and *Pierce*.

## FLSA

The FLSA prohibits any covered employee from working more than a forty-hour workweek unless the employee receives overtime compensation at a rate not less than time and half. 29 U.S.C. § 206. The FLSA also bars employers from retaliating against employees for asserting their rights under the FLSA. 29 U.S.C. § 215(a)(3). Defendant argues that Plaintiff has failed to state a claim upon which relief could be granted under the FLSA because Plaintiff was not an employee who was covered by the FLSA. Rather, Defendant argues that Plaintiff was an independent contractor.

In determining the existence of an employment relationship for purposes of the FLSA, the Court does not solely rely upon "isolated factors but rather upon the 'circumstances of the whole activity.'" *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991). The Court must consider "whether, as a matter of economic reality, the individual [is] dependent upon the business to which [he] render[s] service.'" *Donovan v. DialAmerica Mktg., Inc.,* 757 F.2d 1376,

5

1382 (3d Cir. 1985). Though the entire relationship should be examined, courts have developed certain criteria to assist them in this examination. The Third Circuit has specifically enumerated the following factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293. The Court will address each factor in turn.

*1) Right to Control*

Facts relevant to this inquiry are "the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his or her duties." *Li v. Renewable Energy Solutions, Inc.*, No. 11-3589, 2012 WL 589567, at *7 (D.N.J. Feb. 22, 2012) (citation omitted). The more control an employer has over the worker, the more likely it is that the worker is an employee. *See id.* The fact that a worker is required to be at a given place at a given time or assigned work is not by itself sufficient to support an employer-employee relationship. *See Luxama v. Ironbound Exp., Inc.*, No. 11-2224, 2012 WL 5973277, at *4 (D.N.J. June 28, 2012).

Although Plaintiff states that he worked at least forty hours a week for Defendant, neither party discusses how those hours were scheduled. Plaintiff alleges that Defendant supervised him because Defendant told Plaintiff where he was required to be and what he was required to do. However, this in and of itself does not prove that Defendant had the right to control Plaintiff. Plaintiff does not offer any evidence to dispute Defendant's claim that he worked independently while at Defendant's customer sites. The fact that Plaintiff worked independently at Defendant's

6

customer sites suggests that Defendant did not have the right to control the manner in which Plaintiff's work was performed. Therefore, this factor weighs in favor of finding that Plaintiff was an independent contractor.

*2) Opportunity for Profit or Loss*

This factor centers on whether Plaintiff had meaningful opportunities for profit or any significant risk of financial loss, depending upon his managerial skill. *Martin*, 949 F.2d at 1294. A worker may have the opportunity for profit or loss if his earnings are tied to his performance, or if he makes a capital investment that may be lost if the business does not succeed. *Li*, 2012 WL 589567, at *8. The receipt of a fixed commission or regular salary of a set amount indicates an employer-employee relationship, whereas a worker who is paid per project may be considered an independent contractor. *See Luxama*, 2012 WL 5973277, at *5.

The parties dispute whether Plaintiff made a capital investment in the business, but both parties agree that Plaintiff was paid on an hourly basis. Plaintiff worked at least forty hours per week but had the opportunity to work fifty hours or more. Given that Plaintiff was not paid a set salary and had the opportunity to take on more work to make a larger profit, this indicates that Plaintiff had a meaningful opportunity for profit or loss. Therefore, this factor weighs in favor of finding that Plaintiff was an independent contractor.

*3) Investment in Equipment or Materials, or Employment of Helpers*

This factor considers "the alleged employee's investment in equipment or materials required for his task, or his employment of helpers." *Luxama*, 2012 WL 5973277, at *18. If a worker invests in equipment or employs helpers to complete his tasks, it is less likely that he is an employee. *See id.*

The parties dispute whether Plaintiff invested in equipment or materials and whether he employed helpers. Plaintiff states that Defendant provided some of the materials he required to service Defendant's machines and enabled Plaintiff to purchase materials needed for his projects. Defendant does not address this point in detail, but claims that Plaintiff's company owned its own trucks and tools and equipment. In response, Plaintiff does not dispute that he owned his own tools and states that he did own his own truck. The parties also dispute whether Plaintiff employed helpers, because the only individual Plaintiff employed was Plaintiff's stepson, hired as a co-op student.[2] However, the briefing was unclear as to why Plaintiff's stepson's status as a co-op student was relevant to this inquiry. All of the parties' disputes aside, given that Plaintiff owned his own truck and tools and that he employed a helper of some kind, this factor weighs in favor of finding that Plaintiff was an independent contractor.

*4) Special Skill*

This factor asks whether the service rendered by the alleged employee requires a special skill. In ascertaining worker status, courts should consider whether, "in the larger picture, [workers] have the skills necessary to locate and manage discrete work projects characteristic of independent contractors, or whether the skills are of the task-specific, specialized kind that form a piece of a larger enterprise, suggesting employee status." *Li*, 2012 WL 589567, at *8 (citation omitted). For instance, courts have found an individual possessing a commercial driver's license to have a special skill. *See, e.g.*, *Luxama*, 2012 WL 5973277, at *5.

---

[2] Cooperative education programs, commonly referred to as co-ops, "provide students with the opportunity to gain work experience in their career fields. . . . Students who participate in co-ops stop taking classes to work full time. Co-ops are typically paid and last anywhere from three to 12 months." Briana Boyington, *Understand the Differences Between a Co-op, Internship*, U.S. News and World Report (Mar. 31, 2015, 10:00 AM), http://www.usnews.com/education/best-colleges/articles/2015/03/31/understand-the-differences-between-a-co-op-internship.

Both parties agree that Plaintiff's position required significant skill. Plaintiff notes that his position required an engineering and mechanical systems background. Defendant points out that Plaintiff has licenses to work on gas, turbine, and steam engines, and refrigeration, on U.S. Coast Guard vessels, and international merchant marine vessels. As discussed in the "Right to Control" section above, Plaintiff exercised his own judgment while at the work sites to manage discrete work projects. Given these facts, this factor weighs in favor of finding that Plaintiff was an independent contractor.

*5) Degree of Permanence*

When addressing this factor, courts consider the exclusivity, length, and continuity of the relationship. *Luxama*, 2012 WL 5973277, at *7. A worker who works for an employer exclusively, for a longer period of time, or more continuously is more likely to be an employee. *See id.*

Plaintiff worked for Defendant almost continuously for over three years, except for a brief two-month period when Plaintiff worked for another employer in Russia. Neither party suggests that Plaintiff was hired for a specific period, or to complete one specific task. Although Plaintiff's relationship was not exclusive with Defendant, Plaintiff worked primarily with Defendant, and given Plaintiff's full-time workload for Defendant, Plaintiff likely could not have performed significant amounts of work for other employers. Therefore, this factor weighs in favor of finding that Plaintiff was an employee.

*6) Integral Part of the Employer's Business*

The critical consideration for this factor is "the nature of the work performed by the workers: does that work constitute an 'essential part' of the alleged employer's business? In other words, regardless of the amount of work done, workers are more likely to be 'employees'

9

under the FLSA if they perform the primary work of the alleged employer." *Martin*, 949 F.2d at 1295-96 (citation omitted).

Both parties agree that Plaintiff's work for Defendant in installing, maintaining, and monitoring its on-site systems was an integral part of Defendant's business. Therefore, this factor weighs in favor of finding that Plaintiff was an employee of Defendant.

Taken together, factors one, two, three, and four indicate that Plaintiff was an independent contractor. Factors five and six indicate that Plaintiff was an employee. The economic realities of the relationship also suggest that Plaintiff was dependent on Defendant, given that Plaintiff worked almost exclusively for Defendant. However, this additional consideration is not enough to counter the fact that four out of the six *Martin* factors weigh in favor of finding that Plaintiff was an independent contractor. Given this analysis, the Court finds that Plaintiff was an independent contractor and not covered by FLSA. With regard to this claim, Defendant has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Therefore, summary judgment will be granted on the FLSA claim in favor of Defendant.

<u>Choice of Law: New Jersey State Law Claims</u>

In addition to his claim under the FLSA, Plaintiff also makes two claims under New Jersey state law: one claim under the Conscientious Employee Protection Act ("CEPA") and one claim under *Pierce*. Defendant contends that Plaintiff may not pursue claims under CEPA or *Pierce* because under choice-of-law rules, New York law and not New Jersey law should apply. Plaintiff responds that Defendant waived this choice-of-law argument by not raising it in Defendant's Answer, and instead raising the argument for the first time in its Motion for Summary Judgment.

The Third Circuit has found that choice of law is a defense that can be waived by the defendant if not asserted in a timely fashion. *See, e.g.*, *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014). However, contrary to Plaintiff's assertions that such a defense must be raised in the Answer, the Third Circuit has in some cases allowed a defendant to raise an affirmative defense for the first time in a motion for summary judgment. *See, e.g.*, *Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001); *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1374 (3d Cir. 1993). Rather than setting a firm end point at any specific stage of the litigation, the Third Circuit has held that whether an affirmative defense is waived will depend on whether the defense was raised "at a pragmatically sufficient time" and whether the plaintiff was prejudiced in his ability to respond. *See Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991).

Here, Plaintiff argues that he was prejudiced in his ability to respond to the choice-of-law claims because by raising the issue after the close of discovery, Defendant prevented Plaintiff from seeking discovery related to choice of law. The Court agrees that Plaintiff was prejudiced, as the facts surrounding the locations of Plaintiff's hiring, subsequent work, and his alleged whistleblowing are muddled and would have benefited from additional discovery and briefing in the parties' statements of facts. Without these facts, it is impossible to make an accurate determination on the choice-of-law question. Therefore, the Court will consider this issue waived by Defendant, and will consider Plaintiff's remaining New Jersey claims under CEPA and *Pierce*.

## CEPA

CEPA prohibits an employer from taking an adverse employment action against any employee who exposes the employer's criminal, fraudulent, or corrupt activities. *N.J. Stat.*

11

*Ann.* 34:19-3 (West). CEPA defines an employee as any individual who performs services for and under the control and direction of an employer for wages or other remuneration. *N.J. Stat. Ann.* 34:19-2(b) (West). In making this determination, the Court must consider the following factors:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the employer; (10) whether the worker accrues retirement benefits; (11) whether the employer pays social security taxes; and (12) the intention of the parties.

*D'Annunzio v. Prudential Ins. Co. of Am.*, 927 A.2d 113, 115 (N.J. 2007) (quoting *Pukowsky v. Caruso*, 711 A.2d 398, 404 (N.J. Super. Ct. App. Div. 1998)). The court must also consider "the extent to which there has been a functional integration of the employer's business with that of the person doing the work" and "the worker's economic dependence on the employer's work." *Id.* at 123-24.

Defendant argues that Plaintiff was not an employee for purposes of CEPA. Weighing the above *Pukowsky* factors, the Court agrees. The majority of these factors indicate that Plaintiff was an independent contractor. As discussed above, Plaintiff received work assignments from Defendant but was otherwise unsupervised while working at customer sites. This indicates that Defendant did not have the right to control the means and manner of Plaintiff's performance, and that this was an unsupervised occupation. Both parties acknowledge that Plaintiff's work required a high degree of specialized skill. Plaintiff was not paid directly by Defendant, but was paid through his company, Multiservice. Plaintiff provided at least some of his own equipment, including tools and his truck. Plaintiff received no annual leave, accrued no retirement benefits, and Defendant did not pay his social security taxes. Finally, the intention of

the parties suggests that Plaintiff was an independent contractor: Defendant and Plaintiff structured the position as an independent contractor and only later discussed changing Plaintiff's status to that of an employee. Therefore, factors one, two, three, six, eight, ten, eleven, and twelve indicate that Plaintiff was an independent contractor.

However, some of the factors do indicate that Plaintiff was an employee. As discussed above, Plaintiff's work constituted an integral part of Defendant's business. This also suggests that there was a functional integration of Plaintiff's and Defendant's work. Moreover, Plaintiff worked for Defendant full time and almost continuously for over three years. This suggests that Plaintiff was dependent on Defendant for work. Therefore, factors five and nine, as well as the additional considerations, indicate that Plaintiff and Defendant had an employer-employee relationship.

Because the parties did not describe in detail the manner of termination of the work relationship, this factor will not be considered at this time.

Nine of the twelve *Pukowsky* factors suggest that Plaintiff was an independent contractor under CEPA, which indicates that Plaintiff was not covered by CEPA. Because Defendant has shown that Plaintiff's employment status excludes him from coverage under CEPA, Defendant has also shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Therefore, summary judgment will be granted on the CEPA claim in favor of Defendant.[3]

---

[3] Defendant also argues that Plaintiff's CEPA claim lacks particularity. However, given that Defendant has shown that Plaintiff was not an employee covered by CEPA, the Court need not reach this issue.

## *Pierce*

A cause of action for wrongful discharge under *Pierce* "is grounded in public policy and is designed to protect employees when failing to do so would violate a clear mandate of public policy." *MacDougall v. Weichert*, 677 A.2d 162, 166 (N.J. 1996) (citing *Pierce*, 417 A.2d at 512). The wrongful discharge doctrine "grew out of a need to protect at-will employees, who are under the total control of the employer and without separate or independent contractual rights that provide employment protections." *Id.* (citing *Pierce*, 417 A.2d at 508-09). Therefore, independent contractors are not eligible to pursue a wrongful discharge cause of action under *Pierce*. *Id.*

Whether an individual is characterized as an independent contractor or an employee under *Pierce* "depends not on the nominal label adopted by the parties, but rather on [the relationship's] salient features and the specific context in which the rights and duties that inhere in the relationship are ultimately determined." *Id.* Ultimately, the Court considers the employer's control over the individual, the individual's dependence on the employer, and the absence of any employment protection in determining whether the individual is an employee or an independent contractor. *See id.*

Defendant argues that Plaintiff is not an employee for purposes of a *Pierce* claim.[4] The Court disagrees, finding that the analysis of the above *MacDougall* factors does not result in a clear outcome. As discussed above, Defendant did not exert control over Plaintiff's work. Nor

---

[4] Defendant also argues that Plaintiff waived his *Pierce* claim by simultaneously filing a CEPA claim. However, New Jersey courts have ruled that a plaintiff need not make an election of remedies between a CEPA claim and other claims at the pleadings stage. *See, e.g.*, *Rubin v. Sultan Healthcare, Inc.*, No. 08-6175, 2009 WL 1372272, at *3 (D.N.J. May 15, 2009). Therefore, Defendant's waiver argument is premature. Moreover, given that the Court will dismiss Plaintiff's CEPA claims, the question would appear to be moot.

did Plaintiff have any employment protections. However, Plaintiff did depend on Defendant as Plaintiff worked almost full-time for Defendant. Given that two of the three factors weigh in favor of finding that Plaintiff was an independent contractor, and one does not, the analysis does not result in a clear outcome. This means that the parties have failed to show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Therefore, both parties' requests for summary judgment on the *Pierce* claim will be denied.

CONCLUSION

For the reasons above, Defendant's Motion for Summary Judgment will be granted with respect to Counts 2, 3, 8, and 9 (the FLSA and CEPA claims), and denied with respect to Count 10 (the *Pierce* claim). Plaintiff's Motion for Summary Judgment will be denied in its entirety. An appropriate Order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.